NO. 07-00-0473-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JULY 24, 2002

_____


KAREEM ABDUL JABBAR WHITE, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 64TH DISTRICT COURT OF SWISHER COUNTY;

NO. B3335-99-07CR; HONORABLE JACK R. MILLER, JUDGE

_____

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

Following a plea of not guilty, appellant Kareem Abdul Jabbar White was convicted by a jury of delivery of cocaine, enhanced, and punishment was assessed by the trial court at 60 years confinement and a $5000 fine. Presenting eight issues, appellant challenges his conviction. By issues one and two, he contends the evidence is legally and factually insufficient to sustain his conviction because Agent Tom Coleman, the primary witness,

testified contrary to the allegations in the indictment. By issues three and four, appellant asserts the evidence is legally and factually insufficient to sustain his conviction because by his testimony Agent Tom Coleman placed himself in Amarillo or between Amarillo and Tulia at the time the offense occurred. By issues five through eight, appellant challenges the legal and factual sufficiency of the evidence to establish the elements of a playground as set forth in section 481.134(a)(5) of the Texas Health and Safety Code and whether the crime occurred within 1,000 feet of a playground. Based upon the rationale expressed herein, we affirm.

During an 18-month period from January 1998 to August 1999, Tom Coleman was hired by the Swisher County Sheriff's Office and assigned to the Panhandle Regional Narcotics Task Force to work deep undercover and infiltrate the drug community. Coleman blended into the Tulia community and performed manual labor. He became friends with Elijah Kelly, who introduced Coleman to appellant. On Mondays, Coleman worked at the Tulia Livestock Auction (sale barn). On Monday, September 28, 1998, Kelly and Coleman began their day at the sale barn at approximately 6:30 a.m. Coleman asked Kelly where he could buy crank or methamphetamine. The two eventually ended up at a residence where appellant sold Coleman a bag of cocaine.

By his first four issues, appellant challenges the legal and factual sufficiency of the evidence to sustain his conviction. We disagree. When both the legal and factual sufficiency of the evidence are challenged, we must first determine whether the evidence

2

is legally sufficient to support the verdict. Clewis v. State, 922 S.W.2d 126, 133 (Tex.Cr.App. 1996). It is a fundamental rule of criminal law that one cannot be convicted of a crime unless it is shown beyond a reasonable doubt that the defendant committed each element of the alleged offense. U.S. Const. amend. XIV; Tex. Code Crim. Proc. Ann. art. 38.03 (Vernon Supp. 2002); Tex. Pen. Code Ann. § 2.01 (Vernon 1994). In conducting a legal sufficiency review, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 157 (Tex.Cr.App. 1991), *overruled on other grounds*, Paulson v. State, 28 S.W.3d 570, 573 (Tex.Cr.App. 2000). As an appellate court, we may not sit as a thirteenth juror, but must uphold the jury's verdict unless it is irrational or unsupported by more than a mere modicum of evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex.Cr.App. 1988).

After conducting a legal sufficiency review under *Jackson*, we may proceed with a factual sufficiency review. *Clewis*, 922 S.W.2d at 133. The Court of Criminal Appeals has directed us to ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the fact finder's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex.Cr.App. 2000) (adopting complete civil factual sufficiency formulation); *see also* King

v. State, 29 S.W.3d 556, 563 (Tex.Cr.App. 2000). Accordingly, we will reverse the fact finder's determination only if a manifest injustice has occurred. *Johnson*, 23 S.W.3d at 12. In conducting this analysis, we may disagree with the jury's determination, even if probative evidence supports the verdict, but must avoid substituting our judgment for that of the fact finder. *See* Santellan v. State, 939 S.W.2d 155, 164 (Tex.Cr.App. 1997).

Before determining whether the evidence is legally sufficient to sustain the conviction, we must review the essential elements the State was required to prove. Appellant was indicted for intentionally and knowingly delivering by actual transfer to Tom Coleman, cocaine in an amount of one gram or more but less than four grams. *See* Tex. Health & Safety Code Ann. § 481.112(a) & (c) (Vernon Supp. 2002). Actual transfer consists of transferring the real possession and control of a controlled substance from one person to another person. Nevarez v. State, 767 S.W.2d 766, 768 (Tex.Cr.App. 1989) (en banc).

The evidence established that Kelly introduced Coleman to appellant and that the two met on a number of occasions prior to September 28, 1998. Coleman testified that on the date of the offense, he and Kelly began their Monday at the sale barn at 6:30 a.m. and Coleman asked where he could buy crank or methamphetamine. According to Coleman, Kelly suggested a few names and places and they ended up parked near a residential driveway. Coleman remained in the truck and Kelly walked to the front porch to speak with a man named "Cash." Just then, appellant pulled up in a car and approached Coleman

4

and asked what he needed. Appellant explained that he did not have crank, but did have "powder" and walked inside the house and returned with some "dope" which Coleman bought for $220. A chemist with the Texas Department of Public Safety testified that he examined the substance and determined it to be cocaine weighing 2.98 grams. We conclude the evidence is legally sufficient to establish delivery by actual transfer from appellant to Coleman of cocaine of one or more but less than four grams.

Concluding that the evidence is legally sufficient to support the verdict, we must now determine, after a neutral review of all the evidence, whether it is factually sufficient to support the verdict. *Johnson*, 23 S.W.3d at 11. It is the exclusive province of the fact finder to determine the credibility of the witnesses and the weight to be given their testimony. Johnson v. State, 571 S.W.2d 170, 173 (Tex.Cr.App. 1978); Armstrong v. State, 958 S.W.2d 278, 284 (Tex.App.--Amarillo 1997, pet. ref'd).

The defense's trial strategy was to discredit Coleman by establishing that he was untruthful and that by his testimony, he could not have made a buy from appellant at the time referenced in his report. According to his report, Coleman purchased cocaine from appellant on September 28, 1998, at 10:35 a.m. Coleman testified that after he would make a drug buy in Tulia, it was his routine to return to Amarillo as soon as possible and weigh and test the substance, complete an evidence tag, place the evidence in a temporary narcotics vault, and generate a written report. Mike Amos, Commander of the Panhandle Regional Narcotics Task Force also testified that policy after a drug buy was

to generate a report, conduct a field test, and book the narcotics into evidence on the date of the buy, if possible. Coleman confirmed that after a secretary typed his report of appellant's drug sale, he reviewed it and then signed it.

After a hearing outside the jury's presence, the trial court permitted the defense to question Coleman regarding a separate drug transaction that also took place on the morning of September 28, 1998. According to Coleman's report of the other drug transaction, he made a purchase in Tulia from Willie B. Hall at 9:31 a.m. and paid over task force money at 9:40 a.m. Utilizing Coleman's protocol as testified to by him, the defense attempted to establish that given the 45-minute drive from Tulia to Amarillo, it would have been physically impossible for Coleman to make a purchase from appellant at 10:35 a.m. in Tulia if Coleman was in Amarillo following up on the buy from Hall.

The State argues that although Coleman explained his usual procedure after a drug purchase was to return to Amarillo, there is no evidence to show that Coleman returned to Amarillo after his purchase with Willie B. Hall. Relying on Franklin v. State, 928 S.W.2d 707, 708 (Tex.App.–Houston [14th Dist.] 1996, no pet.), the State further asserts that any conflict in Coleman's testimony goes to his credibility which is to be determined by the fact finder and not to be intruded upon by an appellate court.

Elijah Kelly entered into a plea bargain to testify against appellant. He testified that on September 28, 1998, he observed appellant hand "something" over to Coleman, but

6

that he did not see appellant deliver "dope" to him. The State attempted to discredit Kelly by his prior testimony from another trial that resulted from Coleman's undercover operation. Conducting a neutral review of all the record evidence under *Johnson*, 23 S.W.3d at 11, and without substituting our own judgment, we conclude that the evidence is factually sufficient to support the verdict. Issues one through four are overruled.

By issues five through eight, appellant challenges the sufficiency of the evidence to support the enhancement of punishment where the State failed to prove the elements of a playground and that the crime occurred within 1,000 feet of a playground.[1] We disagree. The enhancement paragraph of the indictment recites

> [a]nd it is further presented in and to said Court that the defendant committed the above offense within 1,000 feet of a playground, to-wit: the Conner Park in Tulia, Texas . . . .

Appellant specifically asserts that the State failed to produce evidence to show that Conner Park is a playground. A playground is defined as "any outdoor facility . . . that is (A) intended for recreation; (B) is open to the public; and (C) contains three or more separate apparatus intended for the recreation of children, such as slides, swings, and teeterboards." Tex. Health & Safety Code Ann. § 481.134(a)(3) (Vernon Supp. 2002). Further, in a prosecution under section 481.134, a map showing the location and

---

[1]We measure the sufficiency of the evidence by the elements of the crime as defined by the hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex.Cr.App. 1997).

boundaries of drug-free zones is admissible in evidence and is *prima facie* proof of the location or boundaries of those areas if the governing body adopts a resolution or ordinance approving the map. *See* § 481.135. When Officer Jim Mull testified, the State introduced Exhibit 4, a resolution for Tulia approving a drug-free zone map. The resolution contains a map showing the location of Conner Park. During his testimony, Mull circled the location of Conner Park on the map and marked the location of the drug transaction with an "X." According to his testimony, he measured the distance between the driveway where the transaction occurred and the park to be approximately 192 feet.

Mull testified that he observed at least three apparatus for the recreation of children at Conner Park. We have searched but found no case law interpreting "apparatus" as used in section 481.134(a)(3)(C). In addition to slides and swings, Mull also observed that the park provided a basketball court, sandbox, and a pavilion. Appellant suggests that we limit the term "apparatus" to include only those items specifically mentioned in the statute, *i.e.*, slides, swing sets, and teeterboards. We agree with the State that the Legislature did not intend to limit playground apparatus to only slides, swing sets, and teeterboards, and that the phrase "such as" could be interpreted as meaning "including but not limited to" the apparatus mentioned in section 481.134(a)(3)(C). We conclude the evidence is sufficient to establish the enhancement paragraph of the indictment that appellant delivered a controlled substance within 1,000 feet of a playground. Issues five through eight are overruled.

Don H. Reavis
Justice

Do not publish.